IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **AHMIR J. KENYATTA**, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Case No. 1:23-cv-646 |
| | : | |
| v. | : | |
| | : | Judge |
| **LIVING ARRANGEMENTS FOR THE DEVELOPMENTALLY DISABLED, INC.**, | : | |
| | : | |
| | : | |
| | : | **JURY DEMANDED** |
| | : | |
| Defendant. | : | |

## COMPLAINT

Now comes Plaintiff Ahmir J. Kenyatta ("Plaintiff"), by and through counsel, and alleges the following against Defendant Living Arrangements for the Developmentally Disabled, Inc., ("Defendant" or "LADD"):

**I.    PARTIES**

1. Plaintiff Ahmir J. Kenyatta is an individual and resident of Ohio, residing in Warren County within the city limits of Lebanon.

2. Defendant is a Non-Profit Corporation registered in the state of Ohio and is headquartered at 3603 Victory Parkway, Cincinnati, Ohio 45229. Defendant can be served through its Registered Agent Susan Brownknight, 3603 Victory Parkway, Cincinnati, Ohio 45229.

3. Upon information and belief, Defendant is in the business of utilizing its employees to provide care for individuals who are unable to take care of themselves and require various levels of care and services due to developmental disabilities and maintains independent living educational and residential programs.

1

## II. JURISDICTION & VENUE

4. Plaintiff re-alleges, and incorporates by reference, the above paragraphs as if fully set forth herein.

5. The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. §1331, in that this case arises under a federal law of the United States.

6. This Court has supplemental jurisdiction over Plaintiff's Ohio state law claims pursuant to 28 U.S.C. §1367 because these claims are so related to Plaintiff's claims under the FLSA that they form part of the same controversy.

7. Venue in the Southern District of Ohio is proper pursuant to 28 U.S.C. §1391(b) because Defendant's principal corporate headquarters is located in Cincinnati, Hamilton, County Ohio.

## III. STATEMENT OF FACTS

8. Plaintiff re-alleges, and incorporates by reference, the above paragraphs as if fully set forth herein.

9. In October 2022, Plaintiff began searching for jobs in the human resources ("HR") field.

10. Plaintiff was in the process of obtaining a position with another company for a senior HR position when Defendant began aggressively recruiting him.

11. Defendant offered Plaintiff an executive position, but for a salary lower than the other company's offer.

12. Plaintiff accepted the Defendant's job offer over the other company's, because Defendant offered an executive-level position.

13. Defendant assured Plaintiff that he would be in the highest position within its Human Resources structure.

14. On February 27, 2023, Defendant hired Plaintiff as its Chief People Officer (CPO).

15. As CPO, Plaintiff's job duties included, but were not limited to, overseeing day-to-day HR Operations and personnel, designing, deploying, and leading HR strategy and deploying, implementing, and managing Defendant's Human Capital Management System.

16. On or about March 8, 2023 Plaintiff was made aware of an FLSA violation regarding LADD employee Lairamy Wiley and another employee.

17. On or about March 10, 2023, Plaintiff contacted the Defendant's CEO, Susan Brownknight, regarding the specific FLSA violations for the two LADD employees.

18. Defendant's CEO, however, directed Plaintiff to conceal and ignore these violations.

19. The plaintiff then began conducting research and his own investigation into these violations and discovered that, in addition to FLSA violations, LADD was also violating the Ohio Wage Act.

20. Since the beginning of his employment, Plaintiff had access to Defendant's servers which granted him access to necessary information that allowed him to perform his job duties.

21. After Plaintiff made a reasonable and good faith effort to determine the accuracy of the information based upon the access LADD provided him, he concluded, based upon objective evidence and his experience, that Defendant was violating federal and state wage law.

22. Plaintiff continued to notify Defendant's CEO of these federal and state wage law violations, including in writing, but she directed Plaintiff to be silent and take no action.

23. On or about March 29, 2023, Plaintiff reported the FLSA and Ohio Wage Act violations, and also concerns he had about a misappropriation of company resources, to the Defendant's Board of Directors via LinkedIn and via email.

24. On or about March 31, 2023, Plaintiff contacted CEO Susan Brownknight notifying her about microaggressions and mistreatment by Defendant's Chief Operating Officer (COO), Brian Hart.

25. On or about April 1, 2023, Plaintiff in his personal capacity as Defendant's employee and in an act that was materially adverse to Defendant, he reported the FLSA violations to the U.S. Department of Labor ("DOL").

26. At the time Plaintiff reported the FLSA violations to the DOL, Defendant had not informed Plaintiff in writing within 24 hours or the close of business the following day that it was taking steps to correct the violations and issues; or inform him that there were no violations or hazards.

27. Defendant instead continued to coerce and intimidate Plaintiff into discontinuing his investigations.

28. Plaintiff's FLSA violation complaints to Defendant were not general policy concerns or application of wage and hour laws to LADD's employees in general; rather, Plaintiff asserted the FLSA for Defendant's employees.

29. Based on Plaintiff's report, the DOL opened an investigation into Defendant.

30. On or about April 6, 2023, Plaintiff became aware of Department of Developmental Disabilities (DODD) violations committed by Defendant, specifically, abuse, neglect, and mistreatment against vulnerable adults.

31. On or about April 7, 2023, Plaintiff reported the DODD violations with Defendant's CEO Susan Brownknight, COO Brian Hart, and HR Manager Lairamy Wiley.

32. At the April 7, 2023 meeting Defendant's CEO directed Plaintiff to not report his concerns although he is a mandated reporter under the law working with vulnerable populations.

33. On or About April 9, 2023, Defendant's Executive Committee assembled an ad hoc committee to investigate Plaintiff and his March 29, 2023 letter.

34. On April 9, 2023, Plaintiff was asked to join a call with Defendant's board members including members of the Taft Law Firm.

35. Following the April 9, 2023 call, three of Defendant's Executive Committee members, Kush Kotecha, Aaron Haslom, and Magie Palazzolo emailed Plaintiff a letter advising him that

4

Defendant was hiring a third-party investigator to investigate his March 29, 2023 letter, that he was being personally investigated for unidentified "Performance Matters" and his "Protected Characteristics." Attached hereto as **Exhibit A**.

36. Following the April 9, 2023 call, three of Defendant's Executive Committee members, Kush Kotecha, Aaron Haslom, and Magie Palazzolo emailed Plaintiff a letter advising him that as a result of his March 29, 2023 letter and the unidentified "performance matters" and his "protected characteristics", he was being put on paid administrative during the investigation effective April 9, 2023. Attached hereto as **Exhibit B.**

37. The next day, April 10, 2023, Plaintiff reported the abuse, neglect, and mistreatment to the Ohio DODD. Plaintiff's April 10, 2023, letter to Kim Hauck, Statewide Director of the Ohio DODD is attached hereto as **Exhibit C**.

38. At the time Plaintiff reported the abuse, neglect, and mistreatment against vulnerable adult violations to the DODD, Defendant had not informed Plaintiff in writing within 24 hours or the close of business the following day that it was taking steps to correct the violations and issues; or inform him that there were no violations or hazards.

39. Defendant instead continued to coerce and intimidate Plaintiff into discontinuing his DODD investigations.

40. Defendant did not correct the abuse, neglect, and mistreatment against vulnerable adult violations or make a reasonable and good faith effort to correct the violations; whereupon, after nearly three (3) days, Plaintiff made his complaint the appropriate regulatory agency, the Ohio DODD.

41. On or about July 16, 2023, a DOL investigator contacted Plaintiff to advise him that she had, in fact, found FLSA violations and that the DOL case remained open.

42. On or about July 28, 2023, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC). The claim number for this charge is: DAY76(000605)07282023.

Plaintiff's claims alleged in the charge are proceeding through the OCRC administrative process and Plaintiff may add these claims to this lawsuit when they are ripe under R.C. 4112.02, *et seq*.

43. By placing Plaintiff on leave, Defendant had unlawfully discriminated against Plaintiff after he reported Defendant's federal law and state law violations.

44. The Defendant, despite allegedly investigating Plaintiff's alleged employment since he was put on administrative leave, notified Plaintiff's counsel via email that Defendant had retained an outside law firm to conduct its investigation as of July 21, 2023.

45. Defendant's delay of one-hundred three (103) days to conduct its investigation into Plaintiff's alleged employment is further evidence that the suspension and placement on administrative leave was pretextual.

46. To this date, Plaintiff continues to remain on paid administrative leave.

47. Plaintiffs' Counsel contacted Defendant's Counsel on multiple occasions seeking status of the investigation and asked when Plaintiff would have an opportunity to respond to any allegations. And yet, no update was provided until on or about July 21, 2023 when Defendant's counsel reported that Defendant finally hired a Third-party investigator, Jefferey Stankus, Esq.

48. As of the date of this Complaint, the Third-Party Investigator has not contacted Plaintiff or his counsel.

49. By placing Plaintiff on indefinite administrative leave, Defendant materially altered his employment status, significantly changed his employment terms, diminished his responsibilities, forced him to quit and created a chilling effect to other employees not to exercise their legal rights. And Defendant took this action because Plaintiff exercised his rights under the FLSA on behalf of other employees and reported Defendant to the DODD, actions that were adverse to LADD's interests.

50. Defendant has not and cannot articulate a legitimate, non-retaliatory business reason for placing Plaintiff on indefinite paid administrative leave.

6

51. Any reason Defendant may offer for placing Plaintiff on indefinite paid administrative leave is just pretext for retaliation.

52. Since being placed upon paid administrative leave, Plaintiff has searched for comparable employment. However, Plaintiff has been unable to find an employment position within his educational and experiential standards, as well as within his acceptable salary range, and Plaintiff lost the opportunity to take the higher salary position he had previously declined before accepting Defendant's offer.

53. As a direct and proximate result of Defendant's willful, unlawful, and criminal actions, Plaintiff has suffered damages in the form of lost wages, future wages, benefits, physical and emotional distress, and other damages to be proven at trial.

54. Defendant knowingly, willfully, or with reckless disregard violated the FLSA by engaging in the retaliatory administrative leave of Plaintiff.

55. Defendant knowingly, willfully, or with reckless disregard violated the Ohio Whistleblower Protection Act by engaging in the retaliatory administrative leave of Plaintiff.

IV. **CAUSES OF ACTION**

**COUNT I**
**RETALIATION IN VIOLATION OF THE FLSA**

56. Plaintiff re-alleges, and incorporates by reference, the above paragraphs as if fully set forth herein.

57. At all times material to this Complaint, Plaintiff was employed by Defendant within the meaning of 29 U.S.C. §203(g).

58. Section 15(a)(3) of the FLSA states that it is a violation for any person to **"**discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.**"**

7

59. Plaintiff brought to Defendant's attention FLSA violations of a specific employee and attempted to remedy those violations.

60. Defendant refused to address the specific FLSA violation and directed Plaintiff to stay silent and ignore them.

61. Plaintiff engaged in the protected activity of asserting a fellow employee under the FLSA and reporting those violations to the DOL which was a materially adverse act against Defendant.

62. As a result of Plaintiff engaging in the protected activity of reporting unlawful violations despite Defendant's supervisors and executives directing Plaintiff to stay silent and ignore the violations; Defendant retaliated against Plaintiff by wrongfully suspending him and placing him on indefinite paid administrative leave on or around April 9, 2023.

63. Defendant knowingly, willfully, or with reckless disregard violated the FLSA by engaging in the retaliatory suspension and leave of Plaintiff.

64. Defendant has not and cannot articulate a legitimate, non-retaliatory business reason for placing Plaintiff on indefinite paid administrative leave.

65. Any reason Defendant may offer for placing Plaintiff on indefinite paid administrative leave is just pretext for retaliation.

66. As a direct and proximate result of Defendant's willful, unlawful, and criminal actions, Plaintiff has suffered damages in the form of lost wages, future wages, benefits, physical and emotional distress, and other damages to be proven at trial.

## COUNT II
## RETALIATION UNDER R.C. 5123.61

67. Plaintiff re-alleges, and incorporates by reference, the above paragraphs as if fully set forth herein.

68. R.C. 5123.61(C) requires certain persons to make reports to the Department of Developmental Disabilities if the person believes that an individual with a developmental disability

8

has suffered or faces a substantial risk of suffering any wound, injury, disability, or condition of such nature as to reasonably indicate abuse or neglect of that individual.

69. R.C. 5123.61(C)(2)(a) requires, among other persons, employees of outpatient health facilities, home health agencies, community mental health facilities, and residential facilities licensed under R.C. 5119.34 that provides accommodations, supervision, and personal care services for three to sixteen adults, to make such reports to the DODD, which includes employees of LADD, such as Plaintiff.

70. Plaintiff made a report regarding LADD under R.C. 5123.61 to the DODD.

71. Because Plaintiff made the report to the DODD, LADD retaliated against Plaintiff by placing him on administrative leave.

72. Defendant has not and cannot articulate a legitimate, non-retaliatory business reason for placing Plaintiff on indefinite paid administrative leave.

73. Any reason Defendant may offer for placing Plaintiff on indefinite paid administrative leave is just pretext for retaliation.

74. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages in the form of lost wages, future wages, benefits, physical and emotional distress, and other damages to be proven at trial.

## COUNT III
### CIVIL PENALTIES FOR CRIMINAL ACTS
### O.R.C. § 2307.60 AND 29 U.S.C. § 216(a)

75. Plaintiff re-alleges, and incorporates by reference, the above paragraphs as if fully set forth herein.

76. The Fair Labor Standards Act, 29 U.S.C §216(a), imposes criminal penalties for willful violations of the FLSA.

77. By their acts and omissions described herein, Defendant has willfully violated the FLSA, and Plaintiff has been injured as a result.

78. O.R.C. §2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

79. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to compensatory and punitive damages pursuant to O.R.C. §2307.60.

## COUNT IV
## OHIO WHISTLEBLOWER PROTECTION ACT – O.R.C. §4113.52

80. Plaintiff re-alleges, and incorporates by reference, the above paragraphs as if fully set forth herein.

81. In or around March and April of 2023, Plaintiff came under the reasonable belief that Defendant and/or one or more of Defendants' employees violated or were violating federal and state law(s) as described herein.

82. Based on Plaintiff's investigations, Plaintiff reasonably believed that the violation(s) constituted a felony or criminal offense.

83. Plaintiff orally notified his supervisor(s) and other responsible officer(s) of Defendant of the violation(s).

84. Plaintiff subsequently filed with the supervisor of officer a written report that provided sufficient detail to identify and describe the violations.

85. Defendant did not inform Plaintiff in writing within 24 hours or the close of business the following day that it was taking steps to correct the violations and issues; or inform him that there were no violations or hazards.

86. Defendant instead continued to coerce and intimidate Plaintiff into discontinuing his investigations.

87. Defendant did not correct the violation or make a reasonable and good faith effort to correct the violations.

88. Whereupon, at the conclusion of the statutory waiting period informed the appropriate federal and state regulatory agencies.

89. At all times material herein, Defendant's conduct in this matter was deliberate and willful.

90. Defendant placed Plaintiff on paid administrative leave in retaliation for making said reports and cooperating with internal, federal, and state investigations.

91. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to, the loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

## COUNT V
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY – O.R.C. §4113.52

92. Plaintiff re-alleges, and incorporates by reference, the above paragraphs as if fully set forth herein.

93. Defendant placed Plaintiff on paid administrative leave in derogation of the public policies against not reporting federal and state law violations and retaliating against an employee for reporting such illegal conduct, which are embodied in Ohio Revised Code 4113.52.

94. Plaintiff has suffered injury as a result of his paid administrative leave by Defendant.

95. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that the court:

A. Injunctive relief precluding continued adverse employment action against Plaintiff, statements about Plaintiff, and other public or private conduct relating to Plaintiff against Defendant, as deemed appropriate at trial;

B. Award Plaintiff compensatory damages in an amount to be shown at trial;

C. Award Plaintiff punitive damages against Defendant in an amount to be shown at trial;

D. Award Plaintiff back pay, front pay, and employment benefits and other economic damages;

E. Award Plaintiff reasonable attorney's fees and costs;

F. Award Plaintiff pre- and post- judgment interest at the statutory rate against Defendant;

G. Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Brian R. Noethlich (OH Bar No. 0086933)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com
bnoethlich@barkanmeizlish.com

*Attorneys for Plaintiff*

## JURY DEMAND

Now comes Plaintiff and demands trial by jury.

*/s/ Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Brian R. Noethlich (OH Bar No. 0086933)

*Attorneys for Plaintiff*

12